[No. 31289. Department One. June 19, 1950.]

*In the Matter of the Estate of* J. R. GWINN, *Deceased.*
MERLE GWINN, *Respondent and Cross-appellant,* v.
CECIL GWINN *et al., Appellants.*[1]

[1]Reported in 219 P. (2d) 591.

584

*J. L. Wallace* and *H. N. Woolson,* for appellants.

*Cameron Sherwood* and *Herbert H. Freise,* for respondent and cross-appellant.

GRADY, J.—This appeal involves the validity of the will of J. R. Gwinn, which was contested by Merle Gwinn, one of his sons. The petition alleges that, when the will was executed, the testator lacked testamentary capacity; that he was unduly influenced by certain named persons, and that he was laboring under an insane delusion. In the will, Cecil and Pearl Gwinn, sons of the testator, were named as executors. Cecil Gwinn waived his right to act, and Pearl Gwinn was appointed by the court. Cecil and Pearl Gwinn, individually, and the latter as executor, joined in an answer to the petition. The court filed a written opinion and entered a decree annulling the will. Attorneys' fees, costs and disbursements were awarded to the contestant and the executor to be paid out of the estate. Cecil Gwinn and Pearl Gwinn have appealed, and will be referred to herein as appellants. Merle Gwinn has taken a cross-appeal from the part of the decree awarding attorneys' fees to the executor, but will be referred to as respondent.

■ The court was of the opinion that the charge of undue influence had not been sustained. The appellants make no assignment of error upon this question, and it will not be considered.

■ The issue of testamentary capacity was presented in a double aspect: general unsoundness of mind, and partial insanity based upon a specific delusion. Our review of the record leads us to the conclusion that the testator at the time he made his will was possessed of sufficient mind and memory to know and understand he was making his will, to know and comprehend the nature and extent of his property of which he contemplated disposing, and to recall his three children, who were the natural objects of his bounty. These are the tests prescribed in the case of *In re Kessler's Estate,* 35 Wn. (2d) 156, 211 P. (2d) 496, and the cases cited in that opinion.

Although a testator meets these tests, he may, nevertheless, be laboring under one or more insane delusions which may have the effect of making his will a nullity. The question to be decided is whether the testator, when he made his will, had an insane delusion that his son Merle Gwinn had accused him of having illicit relations with one or more of the female nurses who attended Phila Gwinn, the wife of the testator, during her last illness, and whether the delusion was of such a character and so affected the testator in making his will that it was invalid.

Our leading case upon the subject of insane delusions is that of *In re Klein's Estate,* 28 Wn. (2d) 456, 183 P. (2d) 518, in which, in summarizing definitions made, we said:

"An insane delusion denotes a false belief, which would be incredible in the same circumstance to the victim thereof were he of sound mind, and from which he cannot be dissuaded by any evidence or argument."

We followed this by saying:

"An insane delusion having been found to exist, it becomes necessary to determine whether such delusion materially affected the will or some provision thereof. It is not every insane delusion that will render a will invalid, but only such as enters into the product of the testamentary instrument."

We quoted from a standard authority to the effect that a delusion which induces a testator to make his will, but which does not affect the provisions of such will, does not render it invalid. However, if the insane delusion is of such a character and operates in such a manner that by reason thereof the testator disinherits a natural object of his bounty, such as one of his children, which he would not have done had he not been laboring under such insane delusion, then the testator is regarded as one not having capacity to make a will, and a will so made is not valid. We followed and approved these principles of law in the recent case of *In re O'Neil's Estate,* 35 Wn. (2d) 325, 212 P. (2d) 823. These cases differ very materially in their factual aspects from the case now before us, and are not cited in support of the findings of fact made by the court in its written opinion, but we

do cite them as authority for the principles of law which must govern when the question of an insane delusion affecting the validity of a will is considered. The subject of insane delusions affecting a will is treated in the annotation in 175 A. L. R. 882.

■■ The courts generally have adopted the view that where a will, rational on its face, is shown to have been executed in legal form, the law presumes testamentary capacity of the testator, that the will speaks his wishes, and in order to overcome such will, the evidence must be clear, cogent and convincing; also that a testator may make an unjust or unreasonable, or even a cruel will, or one based upon an unexplained aversion or bias against a relative, which shows a violent and persistent dislike or animosity, but this alone is not regarded as sufficient evidence of an insane delusion nullifying the will.

We have given consideration to the findings and conclusions of fact made by the trial judge in his written opinion, and after a reading of the statement of facts we find ourselves in accord with those we deem material in support of our conclusions.

The arguments advanced by appellants directed to the findings and conclusions of the trial court are to the effect that many of the factors are not supported by evidence which is clear, cogent and convincing; and that the court placed too much stress upon and gave undue weight to testimony of witnesses with reference to acts and conduct and observations they made of the testator after the date of the execution of the will, and at times so remote therefrom as to make them of little or no value as evidence of the mental capacity of the testator.

■■ The capacity of a person to make a will must be determined as of the time it is made, but evidence bearing upon the mental condition of a testator prior and subsequent to the making of his will is relevant. Such evidence must be confined in point of time to that which may be said to be reasonable and will be an aid to the trier of fact. Remoteness in time may affect its weight rather than its admissi-

bility. It is our opinion that the evidence submitted upon the mental capacity of the testator after the will was made was not so remote in point of time as to render it inadmissible or not entitled to consideration by the court.

The material facts and events upon which we base our conclusions are as follows:

The testator was a farmer and had acquired and operated lands in Columbia county devoted to raising wheat. His family consisted of his wife and three sons. In 1944 Merle Gwinn was residing in Yakima. The testator desired to cease active farming operations and requested his son to take charge of them. Merle moved onto the ranch under a leasing arrangement. Mrs. Gwinn had become an invalid. The elder Gwinns moved to Dayton. As the illness of Mrs. Gwinn progressed, it became necessary that nurses be employed to care for her, and for a time she was in a hospital. The relationship between father and son was very friendly. The first incident tending to indicate any disturbance in that relationship arose over the giving of sleeping pills to the patient by her husband while he was caring for her.

In the fall of 1946, the testator consulted an attorney stating that his wife was quite ill; that there was no hope of her recovery; that he had no will, and requested information as to how to proceed in the case of her death. In November, he called upon the same attorney. At that time he appeared to be in an angry mood. He stated that he was going to disinherit his son Merle, and that Merle had made unjust accusations about him having illicit relations with the nurses who were caring for his wife. The attorney suggested that he should not make his will that day, and that it would be better to give some further thought to it. This was agreeable to the testator. He returned to the attorney's office several days later and informed him that he was of the same mind he had been before. He then informed the attorney as to what he wished his will to contain, and, in accordance with the directions given, the will now before the court was prepared and executed.

There is nothing in the record to indicate that the testator was prompted to disinherit his son because of any ill feeling engendered by the sleeping-pill episode. The only conclusion that can be drawn is that his intention to disinherit was brought about solely because of the belief on his part that Merle had made the accusations he disclosed to his attorney. If Merle had made the accusations, and the testator for that reason had left him out of the will, he would have been acting within his legal rights. There is no evidence, nor reasonable inference from any evidence, that Merle ever made such accusations. All of the evidence on the subject is that they were not made. The nurses were all women of unimpeachable moral character, and there was no basis whatsoever for Merle or any one else to ever suspect that the relationship between them and the testator was in any respect improper.

The thought of the testator that Merle had made the accusations was wholly imaginative, without foundation in fact and the product of a disordered mind. That the mind of the testator at the time he made the will had become disordered is made clear by the observations his friends and neighbors made of changes in his attitude towards others. He had become a consumer of fortified wine. He labored under great anxiety over the illness of his wife. The record contains evidence of a variety of incidents and circumstances which makes it clear that he had become mentally abnormal, though able to transact his ordinary business affairs. His mental state was such as to be a fertile field for the development of an insane delusion.

We find no direct evidence in the record that any one made any special effort prior to the making of the will to persuade the testator that Merle had not made the accusations he had in mind, but there is evidence that his belief was so thorough and his anger so intense that it becomes very clear his mind could not have been diverted from his delusion; it had become a part of his mental processes. The attorney whom he consulted counseled him to think over the charge he had made against his son and to take more time before making a will disinheriting him for that reason,

but when he returned to the office of the attorney some days later, he was laboring under the same delusion. The attorney, however, was not aware that the accusations had not been made and could well assume that the testator was prompted to disinherit his son because of the fact they had been made. The testator appeared to the attorney to have testamentary capacity, and, consequently, he prepared the will as directed.

■ The natural friendly relationship between father and son over the years and the sudden unnatural turn in the opposite direction based upon an insane delusion leads us to the definite conclusion that the will, in so far as it affected Merle Gwinn, was the product of such delusion, and that if the testator had not entertained it he would not have disinherited his son.

Applying the rules of law above set forth to the facts as we find them to be, it becomes necessary to declare the will of the testator to be a nullity.

On his cross-appeal, the respondent urges that Cecil Gwinn should not have been allowed any fee for his attorneys for the reason that he never acted as one of the executors of the will; that the attorneys' fees allowed were excessive, and in any event they should not be as great as the award to respondent because of the lesser amount of services necessarily rendered than those rendered by attorneys for respondent. The estate was appraised at eighty-four thousand dollars. The decree awarded respondent an attorneys' fee of eight thousand dollars for services in the trial court and two thousand dollars on an appeal. The executor was awarded eight thousand dollars for services in the trial court and one thousand dollars for the prosecution of an appeal in the event of affirmance. No question is raised as to the authority of the trial court to award attorneys' fees for services rendered to each party in both that court and in this court.

■ The award for services in the superior court was made only to the executor. The fact that one of the executors named in the will may have waived appointment does

not appear to have affected the amount of services rendered by the attorneys for the executor. The award for services in this court was upon the assumption that the executor would be a party to any appeal taken. However, the appeal has been taken by Cecil and Pearl Gwinn individually. This award must be disallowed and the judgment modified accordingly.

 Rem. Rev. Stat., § 1389 [P.P.C. § 218-9], as construed by this court, makes the amount of an award discretionary with the court. In such a circumstance, our province is limited to a determination whether that discretion has been abused. We are not aided very much by a comparison of the action taken in other cases in which attorneys' fees have been fixed and awarded. In the nature of things, there cannot be uniformity, and a consideration of the cases collectively may suggest some inconsistency, but this is due to the many variations to be found in what the courts have had to consider and the differences in the concepts of judges arising out of their experiences while engaged in the practice of law. The record indicates long and careful preparation for trial. The statement of facts consists of five hundred pages. Fifty witnesses were examined. Briefs were furnished the trial court. The awards seem large, but when we consider that we do not have the opportunity to know or understand all of the many details and acts of services rendered as well as the trial judge, we find it difficult to make an evaluation or to say that the court abused its discretion. We are also unable to say that the record shows such a disparity in the amount or quality of the services rendered to warrant a finding that there was an abuse of discretion in the making of the respective awards.

The respondent will recover taxable costs and disbursements in this court on both the appeal and cross-appeal.

The judgment as modified is affirmed.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and DONWORTH, JJ., concur.